We'll hear argument next in Moore v. Sacha Knoem Baron Cohen, 21-1702. And I understand that counsel for Mr. Moore is available remotely on Zoom. Mr. Kleiman? Good morning. Am I pronouncing that correctly, Mr. Kleiman? Kleiman. Kleiman. Maybe one time it was Kleiman when we came from Ukraine. May it please the court, it's my honor to appear in front of you. I'm very impressed by the thoroughness of the way you recruit cases as I've seen earlier. And I have to recognize and also appreciate the fact that you consider the right of jury trial to be very important. I saw this in your first case that you heard today. Voting Thomas Jefferson, one of our great founding fathers, and also third American president, he stated right before the Constitution was enacted, I consider trial by jury as the only anchor ever yet imagined by man, by which government or anyone else, I'm adding that part, can know the principles of the Constitution. Representative government and trial by jury, the heart and lungs of liberty. Fifth case, your honors, we were not allowed to have the jury make a determination as to consent agreement at issue and also with regard to whether or not there was actual... Well, that's a question of law, isn't it? The significance of the consent agreement is not a factual question for the jury. It's a question of law to be decided by the judges. Well, let me read to you what was said in that preppy decision. I always mispronounce it, your honor. And this is a conflict by the judge, also added to by the Second Circuit by yourself. Not only was there not an identification, not only was there fraud based on peculiar knowledge of the fraudster, in this case, Sacha Baron Cohen, CBS, and Showtime, but there's an ambiguity at a minimum. We contend that the release of consent agreement is clear that you can't get into issues dealing with sexual orientation. There's nothing more sexual issue. There's nothing more heinous than being accused of being a pedophile. People jump off buildings when they're caught to be accused in family law cases in particular. But here, you have that ambiguity. And I'm going to ask my assistant, Mr. Andrews, to put the consent agreement up on the screen. I'll continue as he does that. But what was crossed out and agreed and signed by the defendants who were undisclosed who they were, fraud, Yerushalayim TV. Well, but there's two questions I'd want to ask. One is about the reference to fraud. Under New York law, it's very well established that a provision that disclaims reliance is binding. And there is, apart from the release provision itself, there's a provision specifically disclaiming reliance on any representation made about who these people are and what they're up to. So why doesn't that eliminate the fraud and the inducement issue? Because at the minimum, there's an ambiguity. Excuse me. What is the ambiguity on the fraud point? The sex point is a different issue, and I'll get to that. But on the question of a statement in this release form that is signed by Mr. Moore, it's not crossed out, that specifically says I'm not relying on any representation that people are making about who they are and what their purpose is. So why doesn't that end the claim of fraud? Well, number one, it was undisclosed who they are. Judge Moore didn't have the ability to investigate that, as pointed out in that Penn-Sicket case. Okay, it was a total fraud upon a fraud. I don't want to take up all my time in the briefs. But the fraud was also that they were not going to get into sexual issues, such as being branded as a pedophile. Well, it didn't say that either. That's the second point. What's crossed out is a specific part of a specific part. It strikes out a clause about intrusion or invasion of privacy, but nothing is crossed out about the specific releases from claims of the sort that you are bringing. There's fraud, defamation, intentional infliction of emotional distress. These are all categorically released. Your Honor, it was a fraud to agree not to discuss sexually related issues. But no one said they weren't going to. First of all, no one says they're not going to discuss sexually related issues. It says you may, at best, you may still have a claim for intrusion or invasion of privacy in a situation involving sexual-oriented or offensive behavior or questioning. But you didn't bring such a claim. Your Honor, I respectfully disagree with you on that, because what was crossed out, such as any allegedly sexually-oriented or offensive behavior or questioning, Judge Moore had a right to rely on that in going on the interview. And, in fact, the assistant, the top assistant producer of Cachabar and Cohen, knew that they were violating that agreement and creating a fraud. That's in the minimal deposition that I was able to take as allowed by Judge Cronin. We never had any discovery here, Your Honor. We had no discovery. And the bottom line here, please allow me. Counsel, you had discovery on who the principals of the defendant corporations were. Didn't you have discovery on that? That's limited. And Judge Carter, the prior judge before he was transferred, allowed discovery on all issues, including issues of First Amendment and malice. But if I may, please just read what Judge Preska said. Quote, where there are alternative reasonable interpretations of a contract term, rendering it ambiguous, the issue should be submitted to the trier of fact and is not suitable for disposition on a motion for summary judgment. And Judge Cronin himself recognized that in a prior hearing when he said on December 18th, it's in the record, well, Mr. Klayman, if you prevail on that motion, in the motion that the language is ambiguous, that means that the motions will not prevail on that point. As Ms. Merritt confirmed earlier, that's counsel for defendants, their argument is going to be that the unambiguous language of the SCA, the consent agreement, includes the claims that were brought. And then Judge Cronin stated, if you're accurate, that there's language that makes the argument ambiguous, then that will be a very strong point for you to make when you oppose the motion for summary judgment. Judge Cronin violated his own scriptures. No, he didn't. No, he didn't. Excuse me. Excuse me, Mr. Klayman. You have a legitimate argument, it seems to me, that there is ambiguity in this agreement, and we're going to consider that argument. But that's what Judge Cronin did. He told you, if you can show me this is ambiguous, you win. But he concluded that it wasn't ambiguous because it was limited in what the strikeout related to. Now, that may be right or that may be wrong. But don't tell me that Judge Cronin went back on something he promised you. He considered whether this agreement was ambiguous and decided it wasn't. He may be wrong, and you have an argument that he's wrong. That's what I was attempting to say. That's what I was attempting to say. But we led them to believe that the only issue that was going to come up on summary judgment was the issue of the corporate ownership. We were not allowed discovery into malice or any other issue. It was very limited. It had only one hour with Sacha Baron Cohen. There were issues as to whether or not he was being fed answers. I mean, he was looking down, but I'm not getting into that here. But the bottom line is that this is a jury issue. Your Honor had what I think you're going to in the first case right. You have to give it to the jury. It's not for a judge to decide. A jury appears to decide this. And the case, at a minimum, has to go forward. Now, allow for discovery. We'll see what comes at that point. Judge Carter and Judge Hogan in Washington, D.C., focused in on the fact that this agreement struck out issues regarding to sex. In fact, Judge Carter took us into chambers and said, well, they'll try to settle this. And I was willing to discuss it. The other part wasn't because they're worried about precedent in other cases. But this is a unique case. This is different than the Borat case, than the Prescott case. It's different because there was no ambiguity in the Borat case. The issue, whether it was a documentary or not, here there is an ambiguity. And in the Borat case, parties knew who each other was. Parties didn't know who each other was. There was fraud upon fraud upon fraud. And there was nothing worse. And I asked Your Honor to sit in the shoes of Judge Moore, whatever you may think about him on any other basis, and to say, would you want to be branded a pedophile like this on national and international television, and then cut off of your right to even take discovery, and if you're successful, you know, in a summary judgment motion later, go to a jury. He deserves a jury. Johnny Depp deserved a jury trial. Things seemed to be stacked against him. But when the evidence came out, it turned out that he was telling the truth, and the woman which accused him was not. So this is what we're dealing with here. We're dealing with a manifest justice, a manifest injustice. Judge Carter was going to let this case proceed. He denied a motion to dismiss. He handled this, I think, in the appropriate way. And in this particular matter, the only discovery we got was in Tasha Barnum Cohen's shell corporations, one shell corporation after another to avoid liability, because obviously he feared being sued over this, and, in fact, he was. So that's the point I'm trying to make with Your Honor. And I do respect you, and I respect Judge Cronin, but I have to represent a client. This was not handled fairly. It was not done the right way. And my client deserves his day in court. Thank you. Mr. Clayman, so you've reserved three minutes for rebuttal. You can feel free to use those minutes now or wait for a rebuttal. No, I'll reserve it. Okay, terrific. So we'll hear from Ms. McNamara. Mr. Clayman, let us know if you can't hear Ms. McNamara at any point. Just wait. May it please the Court, thank you very much. My name is Elizabeth McNamara of Davis Wright Tremaine. I'm here on behalf of the appellees. Let me just briefly address a couple of points made by Mr. Clayman in his presentation. One was the peculiar knowledge exception that he believes should control here. I think it's important to underscore just how long New York's law has been definitive on this point. Since 1959, Damon has made it crystal clear that if you specifically disclaim the very contentions that you believe underlie the fraud, that you do not state a claim. And that's precisely what happened here. The claim of fraud is predicated on the fact that he didn't know who the people were and he didn't know what the show was going to be. And that is precisely what was disclaimed in the waiver clause. And as far as the distinction between Borat, Mr. Clayman said that there the parties knew who the plaintiffs knew who the defendants were. But in fact, that was the opposite. That's what they were claiming in Borat as here, that they didn't know that they were really dealing with Sacha Baron Cohen in a satirical comedy. Judge Pooler? No, I was just going to say you said comedy, not very funny. This program was not very funny. Fortunately, that's not the test for you. Yes, every person has their own view about what is comedy. And obviously, yours is different. So on that point as to it's important here I think also to underscore with the peculiar knowledge that in Borat you were dealing with individuals who were the driving instructor and etiquette trainer and they claimed they couldn't read the contract or they hadn't adequately read the agreement before they executed it. And they were still held to their specific disclaimer. Whereas here, we were dealing with a party who not only clearly read the contract, he excised a parenthetical of one part of the release and initialed that. So he clearly read the contract, but more importantly, he was a former Supreme Court Justice of the state of Alabama who really obviously had the knowledge and capacity to that if it was important that this agreement specifically include the representations he was relying on, he could have required that or he could have walked away. Those are the high costs that are required to establish a peculiar knowledge. What about the ambiguity that Mr. Klayman had? The ambiguity, Your Honor, we submit as the court below, there was no ambiguity. I think as Judge Lynch indicated, the only thing that was struck out was a parenthetical regarding the waiver of the privacy or intrusion claim. He arguably could have stated a privacy and intrusion claim arising out of sexually oriented speech, but he did not assert such a claim. Because he signed it off, he crossed it out in the consent. Well, he crossed out that, yes, but he didn't assert that claim. The claims that he asserted were defamation, which was waived, intentional infliction of emotional distress, which was waived, and fraud, which was waived. So there was no ambiguity we submit on the face of the agreement for the court to go beyond it. But let me quickly, Your Honor, go to turn to the First Amendment issues because I think it's important to underscore here that if for any reason this court were to find that the SCA executed by Judge Moore is not fully enforceable, this court can and should still affirm the decision below because Appellant's claims are all barred by the First Amendment as satirical commentary on the issues before the court. In short, the claims fail because no reasonable viewer of the segment could conclude that Sacha Baron Cohen depicting an over-the-top cartoonish character of a former Mossad agent invoking absurd jokes and a wand that supposedly detects enzymes that emitted from pedophiles and at the same time inexplicably can find tunnels that are hidden. No one could reasonably believe that this wand was depicting actual facts about the plaintiff. And it is that requirement that is necessary to state the claim. There was no credible basis for it. As the court below found, this was clearly a joke and no reasonable viewer would have seen it otherwise. Whether you found it funny or not, it was clearly satirical commentary on the events that were depicted at the beginning of the episode. It's important to note that this episode started with showing a montage of the news reports surrounding Judge Moore's run for the Senate and the escalating reports concerning women who were challenging whether he had engaged in sexual misconduct, culminating with the Washington Post stating, woman says Roy Moore initiated sexual encounters when she was 14 and he was 32. It is that predicate, it is that the foundation, that is the satirical commentary that this wand enzyme detecting feature was used. And that is the classic satirical commentary that is fully protected by the First Amendment. So implicit in what you're saying, I take it, is that if Mr. Cohen had said, you know, I do a lot of jokey things in my career, but I want to level with you now. I think that Roy Moore is a terrible person because I think he's a pedophile as illustrated by the Washington Post article. That would be protected conduct because he would have a factual basis. Is that correct? I mean the foundation for his commentary was laid forth in the very segment. So it's important to your argument, I take it, though, to distinguish between that kind of comment and a proposition, a factual proposition, that instead of saying, I read this New York, Washington Post article, not the New York Post. I read this Washington Post article and I believe its contents or something like that. But instead he comes on and pretends that he can prove. Well, actually he doesn't overtly, but it gives the impression that this wand can prove it. That's the thing that is the additional factual content that Cohen is contributing to this discussion, and that's ridiculous on its face. Exactly, Your Honor. It is ridiculous because no one could plausibly believe, a viewer could not plausibly believe, that this wand being waved in front of him could actually detect enzymes that shows that he is in fact a bona fide pedophile. That is not a credible undertaking. It was a mere satirical, whether you liked it or not, commentary and humor on the underlying undisputed facts of the allegations that were asserted against Judge Moore during his senatorial campaign. And it is that that is protected. As Judge Cronin said below, it was abundantly clear to any reasonable viewer that appellees were using humor to comment on the accusations against Judge Moore rather than making independent factual assertions or even remarking on the truth or accuracy of the allegations. That is the crystallized, that's the point that renders this under Hustler as well as a long line of case law in this court as well as other courts establishing that satirical commentary, parody, are among the most protected hallmarks of the First Amendment. And that is the speech that's at issue here. The only distinction that I think somewhat ironically the plaintiff makes on appeal is that this could be believed, that he tries to distinguish Falwell because somehow unlike in Falwell where he contends it was utterly unbelievable, this could be believed. But if there's any link that's created between the underlying news allegations, that's the link that's created and those indisputably occurred. No one could reasonably believe that this fictional Mossad agent in a plainly fictional getup using an obviously ridiculous wand that was actually detecting pedophilia. And so since there simply is not a fact that could be determined here and that this was clearly just political and satirical commentary, we ask that for this reason as well as all the reasons set forth in the record that the court affirm the decision below. Thank you very much. Thank you very much. Mr. Klayman. Your Honor, Ms. McNamara just actually made the argument. The fact is, and Judge Lynch also alluded to it as well, that Sacha Baron Cohen was branding my client as a pedophile, with or without a wand. There was a basis to believe that. It had a plausible credibility that there was a defamation going on here. I might add the Washington Post story, which is not part of the record, never called my client a pedophile, nor has any other publication called my client a pedophile. Sacha Baron Cohen was the only one who did that. And let me read to you polling from two cases. New York Times versus Isaacs, 146 Southwest, 144, 156, Texas Supreme Court, 2004, New York Daily. The test is not whether the story is or is not characterized as fiction, humor, or anything else in the public business. It's whether the charged portion of the context could be reasonably understood as describing actual facts about the plaintiff or actual events in which she participated in. Because of the fact that this was an issue in the Pennant campaign, there was a plausibility to it that he was a pedophile. Is there a plausibility to the idea that this magic wand detects pedophiles? It doesn't matter whether it's a magic wand or anything else, Your Honor. He's being called a pedophile. But that's what Cohen adds to this story. Otherwise, he's just saying these are accusations that were made against this man. No. You didn't sue that woman. You didn't sue the woman who says he made sexual overtures or had sexual contact with me when I was 14 and he was 32. Actually, that woman was sued, but she never actually called him a pedophile. No. Why is he calling someone a pedophile to say when I was a child you molested me? What's the distinction that you're getting at there? I'm not sure. Your Honor, you are litigating another lawsuit. That's not in this case. Let me read. Excuse me. You said that no one called him a pedophile, and I'm just wondering what the significance of the label is. If someone has said you molested me when I was a child and someone else then says she's saying he's a pedophile, what is the distinction there? The distinction is that he wasn't called a pedophile, and that issue is subject to litigation right now. It has not been determined. In fact, in those cases, the point of the jury, Your Honor, and my point deserves to have this go to a jury at least on ambiguity, at least. But let me read to you from the New York case, Owen v. New York Herald Tribune, 310 New York State, 709. Our courts have held that mere exaggeration, irony, or wit does not make a writing libelous unless the article would be libelous without the exaggeration, irony, or wit. And that's the case here. And what Your Honor is doing here, and I'll give respect, is that you're taking things from outside of this case. Well, I think you're actually calling my client a pedophile. That's what you're doing in effect. Well, isn't the Washington Post article, excuse me, the Washington Post article was displayed in this program, right? That's part of this story. But it's not part of what was in front of Judge Cronin at the time. Sure it was. Excuse me. Was not the tape of this episode of this television program, the entirety, not just the part with the interview, part of the record? And the Washington Post, regardless of our disagreement on this, Your Honor, the Post never called him a pedophile. Sorry, it did not. And this is the bottom line here. The bottom line is this. You don't get to make the decision, and neither does Cronin. The jury makes the decision. And I just read you two cases that said it's a jury issue. And whatever you may think of my client. I don't think anything about your client. I'm focused on the facts of this case and the law applicable to this case. This is not about who he is or his politics. That's what I want to do. I don't want to be pulling things out from other cases to use in this case. This case is about simply going to discovery, being able to make your point. And you know what? We were sandbagged. We were sandbagged. We were led to believe that Ted Cronin was only going to discuss the issue of corporate chain of custody or ownership at this time. He never even got into the issue. I just don't understand this. The discovery was about the corporate structure because that was relevant to whether the release was applicable to or could be invoked by Mr. Cohen. That's what that was about. It turns out, apparently, you're not contesting, I don't think, that he is one of the producers who is entitled to invoke this agreement for whatever it's worth. So at least as far as the release issue is concerned, I don't see what additional discovery about malice would have to do with that. We are contesting that, Your Honor, because in the brief, and, Your Honor, I'm sure we'll go back and read them again, is that this was undisclosed. We had no ability to investigate it. No, no, no, no, no, no. Excuse me. The question of, excuse me. Are you contesting that Mr. Cohen qualifies as a producer and is, therefore, one of the parties who is covered by this consent agreement? I didn't see anything in the brief contesting that. We didn't focus particularly on that in the brief. I'm sure there are references to it in the context of the Borat decision and other decisions that the nondisclosure, who was involved, gives rise to an influence, a fraud winner, an ability to really, truly investigate something thrust upon you at the last minute. But I want to emphasize the two main points I'm trying to make today. There is, at a minimum, an ambiguity in this agreement. That must go to the jury to decide whether Mr. Cohen, if I'm in CBS, are released from any liability at all. Secondly, we never had a chance to take a recovery on malice. Judge Carter ordered that and denied a motion for summary judgment. Explicably, Judge Cronin wouldn't let me take more than an hour deposition. And, you know, I have nothing against Judge Cronin, but we were denied due process and we were denied our rights. And we deserve at least to have this case go back and to be able to take discovery. They want to come back to summary judgment later. Okay, we can address the issues at the time. But there's nothing in the record other than, you know, about other cases where he was called a pedophile. It's clear what Cohen was doing. And, Your Honor, this is a matter not just of law but of policy. You cannot permit this kind of smear of an individual. Thank you, Mr. Freeman. It's worse than calling someone a murderer. All right, Mr. Freeman, thank you very much. Very helpful on both sides. Board reserved decision.